**Norman WILLS and Jeanie Wills, Plaintiffs–Appellants,**

**v.**

**BATH EXCAVATING & CONSTRUCTION CO. and Hahn Plumbing & Heating, Inc., Defendants–Appellees.**

**No. 89CA2000.**

Colorado Court of Appeals, Div. V.

June 6, 1991.

Rehearing Denied Aug. 1 and Aug. 8, 1991.

Certiorari Granted May 11, 1992.

Williams, Trine, Mari C. Bush, J. Conard Metcalf, Boulder, for plaintiffs-appellants.

Clifton & Hemphill, P.C., James R. Clifton, Rothgerber, Appel, Powers & Johnson, Patrick Q. Hustead, Franklin D. O'Loughlin, Denver, for defendants-appellees.

Opinion by Judge NEY.

In this personal injury action, plaintiffs, Norman and Jeanie Wills, appeal the summary judgment entered in favor of defendants, Bath Excavating and Construction Company and Hahn Plumbing and Heating, Inc. We reverse and remand with instructions.

While searching, under the direction of defendant Hahn, for underground water pipes, defendant Bath, using heavy excavating equipment, first severed a service line and then caused a second leak in a larger water main. The resultant high-pressure water flow enlarged and filled the excavation. A crew from the City of Fort Collins, which owns the underground pipes, was called to the scene, took charge of the repair operation, and increased the size of the excavation.

Plaintiff Norman Wills and another member of the city water crew attempted to plug the leak in the main line. While standing in the excavation, Wills was injured when struck by sliding mud. Since the injury, he has been unable to return to work at the water department or to continue additional employment in auto repair and as a drywaller.

Wills and his wife initiated this action, alleging that defendants' negligence in severing the water main necessitated the injured plaintiff's presence at the scene of a hazardous condition and resulted in his injuries. Premised on its conclusions that defendants owed no duty to plaintiffs, and that the "fireman's rule" barred plaintiffs' recovery, the trial court entered summary judgment for defendants, and this appeal followed.

## I.

Plaintiffs first assert that the district court erred in concluding that defendants did not owe a common law duty of care to plaintiffs. We agree.

■ Whether a defendant owes a plaintiff the duty to avoid injury is a question of law to be determined by the court, *Smith v. City & County of Denver*, 726 P.2d 1125 (Colo.1986). And, the court in *Taco Bell, Inc. v. Lannon*, 744 P.2d 43 (Colo.1987) articulated the factors to be considered in determining whether the law imposes a duty on a particular defendant. Included were "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the [defendant's] conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the [defendant]."

■ Other considerations may also be relevant, and no one factor is controlling. However, foreseeability is the primary consideration in determining whether an owner or occupier of land owes a duty to persons who enter the premises. "It is the *foreseeability* of harm from the failure by the possessor to carry on his activities with reasonable care for the safety of the en-

trants which determines liability." *Mile High Fence Co v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971); *see Taco Bell, Inc., supra.*

■ The trial court based its conclusion that no duty was owed to plaintiffs here on its previous conclusion that "at the time of plaintiff's alleged injury, these Defendants were no longer *in control of the premises, nor was the work being performed in their charge.*" (emphasis in original) However, the duty, if any, arose prior to the time of plaintiff's injury when defendants created the condition which compelled plaintiff's presence. Accordingly, we must analyze defendants' actions at the time of the rupture of the water lines to see if, indeed, plaintiffs were owed a duty of care.

In applying the factors listed in *Taco Bell, supra,* and *Mile High Fence Co., supra,* we conclude that, first, the element of risk to the public is present when a water line is negligently severed. In addition to disruption of a vital service, the unrestricted flow of water poses a danger to the physical well-being, as well as the property, of citizens. Second, it is foreseeable, having often occurred, that an underground line would be severed if excavated with heavy equipment. It is equally foreseeable that various persons could become involved in repairing a broken line and might be injured in the resultant dangerous conditions. Third, the burden to defendant if required to excavate by greater use of hand tools is primarily cost in time and manpower, but it is appropriate for the burden of increased cost to be borne by those who have undertaken the construction and who will profit by it. Fourth, the result of requiring defendants to exercise reasonable care would be a more cautious procedure which would, in all probability, culminate in a lessening of disruption of service and fewer accidents to public and private employees.

Based on the above analysis, we conclude that defendants owed a duty to exercise reasonable care in the excavation of water lines to avoid injury to plaintiffs.

■ While the question of whether a particular defendant owed a legal duty to a particular plaintiff is one of law for the court to decide, *Smith, supra,* the question of whether the defendant breached that duty by its actions or by its failure to act is one of fact and, therefore, is a matter for resolution by a jury. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo.1981). Accordingly, the trial court erred in entering summary judgment in favor of defendant on the basis that no duty was owed to plaintiff.

## II.

Plaintiffs next contend that the trial court erred in determining that Norman Wills, as an employee of the Fort Collins Water Department, was barred by the "fireman's rule" from recovering damages from injuries suffered while performing his job. We again agree.

The fireman's rule provides that a public emergency employee (initially limited to firemen) in performance of his official duties may not recover in tort when his injuries are caused by negligent conduct which required his official presence. *See Winn v. Frasher,* 116 Idaho 500, 777 P.2d 722 (1989).

Virtually all courts which have addressed the issue have adopted the foregoing principle. *See Berko v. Freda,* 93 N.J. 81, 459 A.2d 663 (1983); *McGee v. Adams Paper & Twine Co.,* 20 N.Y.2d 921, 233 N.E.2d 289, 286 N.Y.S.2d 274 (1967); *Pottebaum v. Hinds,* 347 N.W.2d 642 (Iowa, 1984); *Martin v. Chicago Transit Authority,* 128 Ill. App.3d 837, 84 Ill.Dec. 15, 471 N.E.2d 544 (1984). However, some courts have narrowed the rule by holding that liability would attach if an owner or occupant knew of a hidden danger and had an opportunity to warn the emergency employee of it, *Lipson v. Superior Court,* 31 Cal.3d 362, 644 P.2d 822, 182 Cal.Rptr. 629 (1982), or when risks encountered are not those reasonably to be anticipated by the public employees in question. *See Johnson v. Miller,* 371 N.W.2d 94 (Minn.App.1985); *Jackson v. Velveray Corp.,* 82 N.J.Super. 469, 198 A.2d 115 (1964).

Public policy considerations in support of the rule have often been articulated by the courts. For example, courts have found merit in arguments that one who has knowingly and voluntarily confronted a hazard should not be able to recover for injuries sustained in the confrontation; that public emergency employees receive workers' compensation for injuries, making a tort recovery duplicative; that it would be burdensome to charge all who carelessly cause a fire or other hazardous condition with the injuries suffered by the expert retained with public funds to alleviate the danger; and that individuals may be reluctant to summon emergency employees for fear of lawsuits. *See Kreski v. Modern Wholesale Electric Supply Co.,* 429 Mich. 347, 415 N.W.2d 178 (1987); *England v. Tasker,* 129 N.H. 467, 529 A.2d 938 (1987).

The Colorado Supreme Court adopted the fireman's rule in *Lunt v. Post Printing & Publishing Co.,* 48 Colo. 316, 110 P. 203 (1910). The fireman in *Lunt* was fatally injured when overcome by fumes, which he mistook for smoke, from a toxic substance stored on the premises. The court there found that a fireman answering a call entered the property in question as a licensee rather than an invitee and, as such, was owed only the duty to refrain from inflicting injury willfully or wantonly.

However, *Mile High Fence Co., supra,* rejected the reasoning of *Lunt* which suggests that a plaintiff's status should be dispositive of a landowner's liability. The court in *Mile High Fence Co.* held that:

"[S]tatus or *classification* of one who is upon the property of another is not to be determinative of the occupant's responsibility or the degree of care which he owes to that person ... A person's status as a *trespasser, licensee* or *invitee* may ... have some bearing on the question of liability, but it is only a factor and not conclusive." (emphasis in original)

Defendants argue that *Mile High Fence* does not reject the fireman's rule but is limited to a rejection of the premise that the status of the person who is on the property of another as a trespasser, licensee, or invitee determines the degree of

care which is owed to that person. We are unpersuaded by this argument.

 The court in *Mile High Fence Co.* concluded that it could "no longer permit a landowner's liability to depend solely upon the status of the plaintiff." In our view, by its holding that the status or classification of a plaintiff is merely one factor in determining the question of liability, the supreme court has in effect rejected the fireman's rule.

 It is the basing of liability solely on a status or classification which is at issue, and status is not limited to the common law classifications of trespasser, licensee, or invitee. When liability is limited solely because plaintiff is a fireman, policemen, or public safety officer, it is based on status or classification. Such a result is rejected in *Mile High Fence Co.*.

More recently, this court, in *Banyai v. Arruda*, 799 P.2d 441 (Colo.App.1990), characterized the fireman's rule as an "unwarranted departure from the general duty to exercise due care for the safety of others." The *Banyai* court, citing *Rhea v. Green*, 29 Colo.App. 19, 476 P.2d 760 (1970), concluded that the principle had arguably been rejected by implication in this jurisdiction. There, a policeman sued the defendant in negligence for injuries received while performing his duties as a law enforcement officer.

We agree with the *Banyai* analysis that, while a public safety officer's special skills, training, and experience may be considered with reference to any comparative negligence involved, a *per se* grant of immunity to those whose negligence created a dangerous situation for the officer is unwarranted. In consequence, we conclude that the fireman's rule is no longer the law in Colorado.

The doctrine of assumption of risk is the law in Colorado and poses a question for the trier of fact. And, while not a complete bar to recovery, the assumption of a risk is to be considered by the trier of fact in apportioning negligence. *See* § 13–21–111, C.R.S. (1987 Repl.Vol. 6A). Further, because assumption of risk is a question

for the trier of fact, it may not be decided on summary judgment. *See Harris v. The Ark*, 810 P.2d 226 (Colo.1991).

Finally, we are not unmindful of the worthwhile public policy considerations which have given rise to the fireman's rule. We are also aware of the widespread, albeit often restricted, adoption of the principle in other jurisdictions. However, we leave to the General Assembly any assignment of legal acceptance of the negligence of others to firemen, policemen, or any other public safety officers.

The judgment is reversed, and the cause is remanded for trial.

JONES and DAVIDSON, JJ., concur.